## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| 1.  **DONNA K. ATCHLEY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 11-CV-623-GKF-PJC** |
| 1.  **BAKER HUGHES, INCORPORATED,** | |
| **Defendant.** | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

s/ Steven A. Broussard
Steven A. Broussard, OBA #12582
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone (918) 594-0400
Facsimile (918) 594-0505
**ATTORNEYS FOR DEFENDANT,**
**BAKER HUGHES, INCORPORATED**

# TABLE OF CONTENTS

**Page**

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 1

ARGUMENT AND AUTHORITIES ..................................................................................... 9

I.     Standard of Review for Summary Judgment .................................................... 9

II.    Plaintiff Lacks Evidence Sufficient to Establish Each Element of Her Claims Against Baker Hughes ...................................................................... 10

    A.    Plaintiff's Discrimination Claim Is Barred Because The Charge of Discrimination Was Untimely And Because She Cannot Prove Her Claims for Disparate Treatment on the Basis of Gender ............................................................................................. 10

    B.    Disparate Treatment Based on Work Assignments ........................... 11

    C.    Disparate Treatment Based On All Allegations................................. 12

    D.    Plaintiff Cannot Establish Pretext ..................................................... 13

    E.    Baker Hughes Is Entitled To Summary Judgment on Plaintiff's Title VII Retaliation and Wrongful Discharge Claims Because She Did Not Include Retaliation or Discharge In The Charge of Discrimination.................................................................................... 14

    F.    Baker Hughes Is Entitled To Summary Judgment On Plaintiff's Public Policy Claim ........................................................................ 15

    G.    Baker Hughes Is Entitled to Summary Judgment on Plaintiff's Claim for Retaliation for Filing a Workers' Compensation Claim................................................................................................. 16

III.    Baker Hughes Is Entitled To Summary Judgment Because Plaintiff Waived Her Claims Against Baker Hughes.................................................. 18

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) ................................................... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................... 9, 10

*Bacchus Industr., Inc. v. Arvin Industr., Inc.*, 939 F.2d 887 (10th Cir. 1991) ........................ 9

*Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998) ............................................. 12

*Blackwell v. Shelter Mut. Ins. Co.*, 109 F.3d 1550 (10th Cir. 1997) ...................................... 17

*Brown v. Board of Regents for the Okla. Agricultural and Mechanical Colleges*, 353 Fed. App'x 169 (10th Cir. 2009) ................................ 16

*Buckner v. Gen'l Motors Corp.*, 760 P.2d 803 (Okla. 1988) .......................................... 16, 17

*Bullington v. United Air Lines, Inc.*, 186 F.3d 1301 (10th Cir. 1999) .................................. 14

*Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989) ............................................................. 15, 16

*Corbett v. Combined Communications Corp.,* 654 P.2d 616 (Okl. 1982) ............................ 18

*Darrow v. Integris Health, Inc.*, 176 P.3d 1204 (Okla. 2008) ............................................... 15

*Davidson v. America Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003) ...................................... 15

*Diaz v. AIG Mktg., Inc.*, 396 F. App'x 664 (11th Cir. 2010) ................................................ 12

*Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492 (10th Cir. 2000) ............................................ 10

*E.E.O.C. v. PVNF, Inc.*, 487 F.3d 790 (10th Cir. 2007) ....................................................... 11

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210 (10th Cir. 2002) ........................................ 11

*Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir. 1998) ............................... 14

*Jones v. Barnhart*, 349 F.3d 1260 (10th Cir. 2003) ............................................................... 12

*Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003) .............................................................. 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 10

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................................... 11

*Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997) ...................................... 11, 12, 14, 15

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) .................................. 10, 14

*Simms v. Oklahoma*, 165 F.3d 1321 (10th Cir. 1999) ........................................................ 9, 13

*Stinnett v. Safeway, Inc.,* 337 F.3d 1213 (10th Cir. 2003) .................................................... 13

*Taylor v. Cache Creek Nursing Centers*, 891 P.2d 607 (Okla. Civ. App. 1994) ............. 16, 17

*Thompson v. Peters, 885 P.2d 686* (OK CIV APP 1994) ....................................................... 18

*Trumbower v. Sports Car Club of America, Inc.*, 428 F.Supp. 1113 (W.D.Okl.

## TABLE OF AUTHORITIES
### (continued)

**Page**

1976) .................................................................................................................... 18

*Wallace v. Halliburton Co.*, 850 P.2d 1056 (Okla. 1993) .................................................. 17

*Wilbanks v. Nordam Group, Inc.*, No. 09-CV-0572-CVE-TLW, 2010 WL
4272581, *17 (N.D. Okla. Oct. 25, 2010)....................................................................... 16

## STATUTES

42 U.S.C. § 2000e ............................................................................................................. 1, 10

*Okla. Stat. tit. 25 § 1302(A)* ............................................................................................. 15

Okla. Stat. tit. 85 ..................................................................................................... 1, 10, 16

## RULES

*Fed. R. Civ. P. 56(a)* ........................................................................................................... 9

*Fed. R. Civ. P. 56(c)* ......................................................................................................... 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. **DONNA K. ATCHLEY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 11-CV-623-GKF-PJC** |
| 1. **BAKER HUGHES, INCORPORATED,** | |
| **Defendant.** | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Baker Hughes, Incorporated ("Baker Hughes") by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits its Motion for Summary Judgment and Brief in Support against Plaintiff.  Based on the undisputed material facts and governing law, Baker Hughes requests that the Court grant it judgment as a matter of law on all of Plaintiff's claims.

Plaintiff was employed by Baker Hughes at its Claremore, Oklahoma facility.  In her amended petition, Plaintiff asserts four claims for relief:  (1) disparate treatment on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, as amended ("Title VII"); (2) retaliation in violation of Title VII; (3) retaliation in violation of Okla. Stat. tit. 85, § 5; and wrongful discharge on the basis of sex in violation of Oklahoma public policy.  *See Amended Petition.*  Baker Hughes denies that it violated any laws or public policies with regard to Plaintiff and, as discussed in more detail below, Baker Hughes is entitled to summary judgment on all of Plaintiff's claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Baker Hughes manufactures and services oil and gas field machinery and equipment. *Affidavit of Bill Poole, Attachment A.*

2.      Plaintiff began her employment with Baker Hughes in 2000 at the company's Claremore, Oklahoma facility or "Centrilift".  *Pp. 19-20, 47-49, Ex. 3, Pl's Depo, Attachment B.; Affidavit of Bill Poole.*

3.      When Plaintiff began her employment with Baker Hughes she worked as a "packaging cabler" or "cable packager."  *Pp. 70-73, Pl's Depo., Att. B.*

4.      In 2001, Plaintiff became a "tape line operator."  *Pp. 74-76 , Pl's Depo., Att. B.*

5.      In April of 2002, Plaintiff returned to the cable packager position.  *Pp. 77-79 , Pl's Depo., Att. B.*

6.      In December of 2002, Plaintiff was transferred to the position of "cable splicer." That position required Plaintiff to stand 8-10 hours per 12-hour shift;  lift items weighing as much as 50 pounds;  and engage in stooping and bending.  *Pp. 79-81, Pl's Depo., Att. B.*

7.      During the course of her employment, Plaintiff was supervised by Tim Horner ("Horner").  *Affidavit of Tim Horner, Attachment C.*

8.      During the course of her employment with Baker Hughes, Plaintiff received numerous "corrective action notices" and "employee counselings" concerning various issues. *Pp. 142-44, 159-62, Ex. 21, 24 and 25, Pl's Depo., Att. B.*  In August of 2001, she received a written counseling for unsatisfactory attendance. *Id.* at *Ex. 21 (HE-ATCHLEY00061), Pl's Depo.* In  October of 2001, she received a corrective action notice for excessive absenteeism. *Id.* at *Ex. 21 (HE-ATCHLEY00060), Pl's Depo.*  In June of 2005, she received another written warning regarding poor attendance. *Id.*  In September of that same year she received an employee counseling for violating safety procedures and excessive phone calls. *Id.* at *Ex. 21 (HE-ATCHLEY00059), Pl's Depo.*  Less than a year later, in July of 2006, Horner provided Plaintiff, and other employees under his supervision (including males), with an employee counseling

record which addressed various performance issues.  *Id.* at *Ex. 21 (HE-ATCHLEY00057-00058), Pl's Depo.;  Affidavit of Tim Horner, Att. C.*  In February of 2008, she received another written warning regarding unsatisfactory attendance.  *Ex. 24, Pl's Depo., Att. B.*  On August 21, 2008, Plaintiff and a male employee received written warnings for engaging in horseplay.  *Id.* at *Ex. 25, Pl's Depo.*;  *Affidavit of Tim Horner, Att. C.*

9.      Horner has issued written corrective action notices and employee counselings to several male employees under his supervision for issues similar to those for which Plaintiff received written warnings and as described in paragraph 8 of these undisputed material facts. *Affidavit of Tim Horner, Att. C.*

10.      Horner has never discriminated against Plaintiff based on her sex, because she filed a worker's compensation claim or in retaliation for her alleging that Horner discriminated against her because she is a woman.  *Affidavit of Tim Horner, Att.C.*

11.      During the course of Plaintiff's employment, Horner has approved several pay raises for Plaintiff resulting in her base pay reaching the highest pay scale for her "Job Group" classification.  Additionally, he has recommended her for special recognition within the company by approving her for a "Core Value Award."  *Pp. 110, 112-13, 127-31, Ex. 20 (HE-ATCHLEY00024, 00023, 00021 & 00011), Pl's Depo, Att. B.;  Affidavit of Tim Horner, Att. C.*

12.      In October of 2006, Plaintiff sustained injuries to her hands, elbows, and neck while working as a cable splicer.  As a result of the injuries, she underwent three separate surgeries in 2007 and 2008.  Additionally, as a result of the injuries, continuing to as late as October of 2009, Plaintiff had physical limitations that restricted her from working as a cable splicer.  *Pp. 7-9, 167-75, 209-212, 216-219, 223-24, Ex. 1 (HE-ATCHLEY02335, 02327, 02318, 02320, 02322) & 29, Pl's Depo.*, Att. B.

13.     As a result of the work related injuries, Plaintiff was not able to perform all the essential functions of a cable splicer.  *Id.*  Consistent with Baker Hughes' policy, because the injuries may have been work related, Baker Hughes temporarily assigned Plaintiff duties that it believed were consistent with her work limitations with the hope that while performing these light duty assignments she would recover sufficiently to reassume the cable splicer position. According to Plaintiff and a court appointed vocational rehabilitation consultant, as a result of the injuries, and at least until October of 2009, Plaintiff was not capable of working as a cable splicer.  *Id.*

14.     In the proceeding before the Oklahoma Workers' Compensation Court regarding the workplace injuries, on August 6, 2009, less than a week after Plaintiff's last day of employment with Baker Hughes, Plaintiff requested that the Workers' Compensation Court grant her "vocational retraining."  *Pp. 7-9, 166-67, 222  Ex. 1 (HE-ATCHLEY02335) & 31, Pl's Depo.*, Att. B.   Subsequent to Plaintiff's request, on August 24, 2009, the Oklahoma Workers' Compensation Court found "THAT [Plaintiff] should submit to an evaluation to determine the practicability of, need for and kind of vocational rehabilitation services or training necessary and appropriate in order to restore [Plaintiff] to gainful employment."   *Id.* at *Ex. 1 (HE-ATCHLEY02327), Pl's Depo.*

15.     At the end of March or in April of 2008, Plaintiff submitted a complaint or grievance to Barbara Stelzer ("Stelzer"), former Baker Hughes HR Supervisor, in which Plaintiff alleged that she was subjected to unequal wages, denied training, denied a work assignment to the PCP area[1], denied overtime[2], delayed pay progression in relation to her peers, delayed award

---

[1] According to Plaintiff, had she been assigned a position in the PCP area, she would have suffered a one or two dollar reduction in her hourly rate of pay. *Id.* at *Pp. 101-02, Pl's Depo.*

[2] During her deposition, Plaintiff stated that Horner denied her opportunities to work overtime but that she was able to get overtime by requesting overtime from another supervisor, Andy Lago ("Lago"). *Id.* at *Pp. 140-41, Pl's Depo.*

for recognized service (Core Value Award)[3] and incurred "tardy points when her male counterparts did not receive them."  Plaintiff's allegations of wrongdoing were directed against Horner.  *Affidavit of Barbara Stelzer, Attachment D; P. 152, Ex. 23, Pl's Depo., Att. B.*  Upon receipt of the complaint, Stelzer promptly began a thorough review of each allegation, which included interviewing 20 employees.  *Id.*

16.     According to Plaintiff, Horner was the only person she had problems with during her employment with Baker Hughes.  *P. 15, Pl's Depo., Att. B.*

17.     According to Plaintiff, except for occasionally directing her to perform certain tasks (sweeping), Horner's alleged inappropriate conduct ended when she submitted the complaint or grievance to Stelzer.  *Pp. 145-46, 187, 189-91, 193-95, Pl's Depo., Att. B.*

18.     Stelzer's review did not uncover evidence sufficient to support Plaintiff's allegations:

> a.   Horner does not  have a problem with women nor does he treat them differently than men;
>
> b.   Plaintiff was not afforded fewer training opportunities than men – she received cross training in six areas outside of her then current work environment;
>
> c.   Pay raises to Plaintiff were not delayed due to her gender.  Some pay raises were delayed due to Plaintiff's attendance – Baker Hughes had a policy of delaying pay raises for men and women based on excessive absences.  Plaintiff was not treated more poorly than men and received pay increases in accordance with company policy;

---

[3] Plaintiff testified that she believed that there was a 3 week or one month delay in her receipt of the Core Value Award – a camera.  *Id.* at *Pp. 201-02, Pl's Depo.*

d.  There is no evidence that any delay in Plaintiff's receipt of a Core Value Award was  related to her sex.  Additionally, with Horner's approval,  Plaintiff received a Core Value Award on two separate occasions;

e.  Horner did not misapply the attendance policy toward Plaintiff and treated her in a manner similar to his treatment of male employees in application of the policy;

f.  There was no evidence that Plaintiff was denied overtime due to her gender or that anyone misapplied the policy regarding overtime with respect to Plaintiff; and

g.  Horner did not tell Plaintiff that she was too short to work in the PCP area. However, the position in the PCP area did have a height requirement – 5'6".

*Affidavit of Barbara Stelzer, Att. D;  p. 102-03, Ex. 18, Pl's Depo., Att. B.*

19.      Plaintiff is only 5' tall.  *P. 100, Pl's Depo*., Att. B.

20.      Apparently dissatisfied with Stelzer's investigation, Plaintiff utilized Baker Hughes's Internal Business Ethics Helpline to raise the same concerns that she had relayed to Stelzer.   Jeff Rehwald ("Rehwald"), HR Manager of Investigations, reviewed the matter and conducted additional interviews and, like Stelzer, did not find evidence to support Plaintiff's allegations.  *Affidavit of Barbara Stelzer, Att. D*.

21.      On April 15, 2009, more than 300 days after she had submitted her grievance to Stelzer, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") in which she restated allegations that were investigated by Stelzer and Rehwald.   In the Charge of Discrimination, she did not allege retaliation nor did she allege that she had been wrongfully discharged.  *Pp. 180-181, Ex. 26, Pl's Depo., Att. B.*

22.     On January 13, 2010, more than 5 months after Plaintiff's employment with Baker Hughes ended, the EEOC closed its file on the Charge of Discrimination and issued a "Dismissal and Notice of Rights" letter.   *P. 181,  Ex. 27, Pl's Depo., Att. B.*

23.     As a result of a reduction in force, Plaintiff's employment ended on July 30, 2009. She was discharged due to a business slowdown and because Baker Hughes concluded that Plaintiff's overall performance ranked below the performance of her male and female peers. *Affidavit of Bill Poole.*

24.     Baker Hughes did not discriminate against Plaintiff based on gender. Additionally, she was not dismissed because she filed a worker's compensation claim or in retaliation for making allegations of sex discrimination.  *Id.; Affidavit of Barbara Stelzer, Att. D; Affidavit of Tim Horner, Att. C.*

25.     On or about March 3, 2010, long after her employment had ended and the EEOC had closed its file on Plaintiff's Charge of Discrimination, Plaintiff entered into a settlement agreement with Baker Hughes.  On March 3, 2010, Plaintiff testified under oath as follows:

Q:  And do you understand that we are here today to settle your case by what is known as joint petition settlement?

[Plaintiff].  Yes.

Q.  Now, you had an Order we had gotten back in August, 2009, for permanent disability; Right?

[Plaintiff].  Yes.

Q.  And they have been paying the Order.  In addition to that, you had an Order for vocational rehabilitation and you went and had an evaluation for that; correct?

[Plaintiff].  Yes.

Q.  And so basically, what we are doing today, is settling the case by joint petition.  **We are going to close everything down.  We are going to pay you some extra money.**   It is going to be an additional $5,000.00 over the balance of the Order.  That will cover any vocational rehabilitation you need and just pay you something for closing your case down.  Do you understand that?

[Plaintiff].  Yes, sir, I do.

*P. 232, Ex. 32 (p 3, ln 17,  – p.4, ln 11 ), Pl's Depo., Att. B. (emphasis supplied).*

.   .   .

Q.  Basically, we are going to pay you the $5,000.00 over the balance of the Order today and then you won't be able to come back to this Court **or any other court and ask for anymore benefits from Centrilift** or their Workers' Compensation Carrier regarding this accident on October 26, 2006.  Do you understand that?

[Plaintiff].  Yes, sir.

*Id.* at *Ex. 32 (p. 5, ln 4 – ln 10), Pl's Depo. (emphasis supplied).*

.   .   .

Q.  Have you gone back to work for Centrilift?

[Plaintiff].  I went back to work in July after my surgery and then got laid off - - or January went to work and then got laid off in July.

Q.  Okay.  Did you have any other accidents or injuries working there?

[Plaintiff].  No.

Q.  **So once we settle this case, is there going to be a clean slate between you and them?**

[Plaintiff].    **Yes.**

*Id.* at Ex. 32 (p. 7, ln 7 – ln 16), Pl's Depo. (emphasis supplied).

.   .   .

26.     According to Plaintiff, she interprets the term "clean slate" as meaning resolving all disputes and differences between parties. *Pp. 163-64, Pl's Depo., Att. B.*

27.     On April 12, 2010, over a month after Plaintiff had entered into the settlement with Baker Hughes, she filed this action. *See Petition.*

## **ARGUMENT AND AUTHORITIES**

### I.     **Standard of Review for Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a).* An issue is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

When addressing a motion for summary judgment, a court must examine the factual record and draw inferences "in the light most favorable to the nonmoving party." *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). Nevertheless, where, as here, the nonmovant bears the ultimate burden of proof, the movant "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997). Instead, the movant need only demonstrate "an absence of evidence to support the nonmoving party's case." *Bacchus Industr., Inc. v. Arvin Industr., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

Thereafter, "the burden shifts to the [nonmovant] party to show that there is a genuine issue of material fact." *Id.* at 891. To satisfy this burden, the nonmovant "must do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Fed. R. Civ. P. 56(c)(1)*. As a result, to avoid summary judgment, the nonmovant bears "the burden of raising a genuine issue of material fact on each element of [her] prima facie case." *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).

II.   **Plaintiff Lacks Evidence Sufficient to Establish Each Element of Her Claims Against Baker Hughes**

Plaintiff asserts four claims for relief: (1) disparate treatment on the basis of gender in violation of Title VII; (2) retaliation in violation of Title VII; (3) retaliation in violation of the Okla. Stat. tit. 85, § 5[4]; and wrongful discharge on the basis of sex in violation of Oklahoma public policy. *See Amended Petition*. As set forth below, Plaintiff lacks evidence sufficient to establish any of these claims against Baker Hughes. Accordingly, Baker Hughes is entitled to summary judgment in its favor on each of Plaintiff's claims.

A.   **Plaintiff's Discrimination Claim Is Barred Because The Charge of Discrimination Was Untimely And Because She Cannot Prove Her Claims for Disparate Treatment on the Basis of Gender**

42 USC § 2000e-5(e)(1) provides that an employment discrimination charge filed with the EEOC under Title VII must be filed within 300 days after the alleged discriminatory act or lose the ability to recover for it. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002). Here, Plaintiff admits that the conduct that she alleges was discriminatory and which was reported to Stelzer ended at the time that she made her complaint to Stelzer, March

---

[4] Section 5 was repealed in 2011.

or April of 2008.  *Pp. 145-46, 187, 189-91, 193-95, Pl's Depo., Att. B.*  Plaintiff filed the Charge

of Discrimination in April of 2009, more than 300 days after the all of the objectionable conduct

specifically identified in the Charge of Discrimination had ended.  Therefore, in accordance with

*Morgan*, except for perhaps certain work assignments, Plaintiff's Title VII claim is untimely.

### B.       Disparate Treatment Based on Work Assignments

Plaintiff has alleged that following her March or April 2008 grievance Horner would

sometimes tell her that "she needed to get busy" and instructed her to sweep when other

employees in the area were sitting around.  *Pp. 191-92, Pl's Depo, Att. B.*  Although she

concedes that male employees also swept the area, she suggests that she was required to sweep

more than others. *Id.*

Where, as here, a plaintiff's claims are based on circumstantial evidence of

discrimination, those claims must be analyzed under the burden-shifting framework outlined by

the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Garrett v.*

*Hewlett-Packard Co*., 305 F.3d 1210, 1216 (10th Cir. 2002).  The plaintiff bears the initial

burden to produce sufficient evidence to establish a prima facie case of discrimination.  *Id.*  "[A]

prima facie case of discrimination must consist of evidence that (1) the [plaintiff] belongs to a

protected class; (2) [she] suffered an adverse employment action; and (3) the…action took place

under circumstances giving rise to an inference of discrimination."  *E.E.O.C. v. PVNF, Inc*., 487

F.3d 790, 800 (10th Cir. 2007).  If the plaintiff establishes a prima facie case of discrimination,

the defendant must articulate a legitimate, nondiscriminatory reason for its action.  *Garrett,* 305

F.3d at 1216.  If the defendant does so, "the plaintiff must either show that [her protected

characteristic] was a determinative factor in the defendant's employment decision, or show that

the defendant's explanation for its action was merely pretext."  *Id*.  A plaintiff can show pretext

by revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and quotations omitted).

To the extent that Plaintiff premises her discrimination claim on an increased workload, she cannot establish a prima facie case of discrimination.  As the Tenth Circuit has made clear, although "an increased workload might constitute an adverse employment action in some circumstances…generalized and unsubstantiated claims [of an increased workload] do not rise to the level of an adverse employment action." *Jones v. Barnhart*, 349 F.3d 1260, 1269-70 (10th Cir. 2003) (emphasis added); *see also Diaz v. AIG Mktg., Inc.*, 396 F. App'x 664, 667 (11th Cir. 2010) (employer's decision to increase employee's workload was not an adverse employment action because "[i]t is not [the court's] role to second-guess [the employer's] business decisions, and changes to an employee's work assignments are rarely sufficiently 'adverse' to warrant scrutiny under the anti-discrimination laws"); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (finding that employer's alleged assignment of a heavy workload to former employee was an administrative matter and not an adverse employment action).  Here, Plaintiff has nothing more than the type of generalized and unsubstantiated claims of an increased workload that the Tenth Circuit discounted in *Jones*.  Thus, to the extent that it is based on generalized allegations of an increased workload, Plaintiff cannot establish the second element of a prima facie case of discrimination.

### C.    Disparate Treatment Based On All Allegations

Even if Plaintiff had timely filed her Charge of Discrimination, she cannot establish a prima facie case of sex discrimination because she cannot show that she suffered an adverse employment action at that time or that actions took place under circumstances giving rise to the

inference of discrimination.   An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision causing a significant change in benefits.   *Stinnett v. Safeway, Inc.,* 337 F.3d 1213, 1217 (10th Cir. 2003).   Plaintiff cannot demonstrate that she suffered any actions during her employment sufficient to constitute an adverse employment action.   *See Undisputed Material Fact 18.*   She cannot identify a **significant** change in employment due to her alleged lack of training, delay in pay raises and receipt of a Core Value Award, alleged misapplication of the attendance policy, Horner's failure to grant her overtime or denial of a transfer to the PCP position, which paid less than her then current position.   *Id.* Furthermore, to the extent that these actions occurred there is no evidence that the actions took place under circumstances giving rise to an inference of discrimination.   *See Undisputed Material Facts 18I and 23.*   Of course, a discharge from employment is an adverse action but her discharge did not take place under circumstances giving rise to the inference of discrimination. She was released as part of a reduction in force due to a business downturn and her relatively low ranking compared to her peers.   *See Undisputed Material Fact 23.*   For these additional reasons, Baker Hughes is entitled to summary judgment on Plaintiff's Title VII.

     **D.**     **Plaintiff Cannot Establish Pretext**

     To the extent Plaintiff can establish a prima facie case,   Plaintiff can point to no admissible evidence that Baker Hughes' proffered reasons for its conduct were a pretext for sex discrimination.   *See Undisputed Material Facts 18 and 23.*   Further, the fact that Plaintiff may have disagreed with Baker Hughes' decisions or believes that she was treated unfairly does not suggest pretext for discrimination.   As the Tenth Circuit has made clear, courts are not "super-personnel departments" free to second-guess the business judgment of an employer.   *Simms v. Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999).   [T]he court's role...[is] not to determine if

[the employer's]...decisions were wise or fair, but rather, in the context of [a] disparate treatment claim, if those decisions were motivated by discriminatory animus." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 & n.14 (10th Cir. 1999), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Because Plaintiff has no evidence from which a reasonable jury could find Baker Hughes' decisions with respect to Plaintiff were pretextual, Baker Hughes is entitled to summary judgment on all of Plaintiff's Title VII claims.

> **E.** **Baker Hughes Is Entitled To Summary Judgment on Plaintiff's Title VII Retaliation and Wrongful Discharge Claims Because She Did Not Include Retaliation or Discharge In The Charge of Discrimination**

Because the Charge of Discrimination did not contain a charge of retaliation or wrongful discharge, those Title VII claims must fail. *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998). The Tenth Circuit has rejected the continuing violation theory by which prior discrimination claims necessarily include subsequent retaliation claims arising therefrom. As the Tenth Circuit has explained:

> [T]he Supreme Court's recent pronouncement in *National Railroad Passenger Corp. v Morgan*, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions. … [U]nexhausted claims involving discrete employment actions are no longer viable. *Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted. Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'. In *Morgan*, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought, when those incidents occurred more than 300 days prior to the filing of plaintiff's EEO complaint. The rule is equally applicable, however, to discrete claims based on incidents

occurring after the filing of [a] [p]laintiff's EEO complaint. The existence of past acts...does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

…

Our decisions have unambiguously recognized *Morgan* as rejecting application of the "continuing violation" theory. In *Davidson v. America Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003), this court explained [that] [i]n *Morgan*, the Supreme Court held that a continuing violation theory...is not permitted for claims against discrete acts...[and] a claimant must file a charge...within the appropriate limitations period as to each such discrete act...that occurred. Application of this rule to incidents occurring after the filing of an EEO complaint is consistent with the policy goals of the statute. First, requiring exhaustion of administrative remedies serves to put an employer on notice of a violation prior to the commencement of judicial proceedings. This in turn serves to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation.

*Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (emphasis added; citations, quotations, and alterations omitted). Accordingly, Baker Hughes is entitled to summary judgment on Plaintiff's Title VII retaliation and wrongful discharge claims.

## F.   Baker Hughes Is Entitled To Summary Judgment On Plaintiff's Public Policy Claim

Under the Oklahoma Anti-Discrimination Act ("OADA") is "a discriminatory practice for an employer…to discharge…an individual…because of…sex." *Okla. Stat. tit. 25 § 1302(A).* Although the OADA did not, at the time Plaintiff initiated her lawsuit, provide an individual cause of action for wrongful discharge, the Oklahoma Supreme Court has "recognized an actionable common-law tort for an at-will employee's discharge in contravention of a clear mandate of public policy." *Darrow v. Integris Health, Inc*., 176 P.3d 1204, 1208 n.8 (Okla. 2008); *Burk v. K-Mart Corp*., 770 P.2d 24, 29 (Okla. 1989). For purposes of summary judgment, federal courts essentially apply the same evidentiary standards to Federal

antidiscrimination claims and their Oklahoma common law counterparts under *Burk*. *See Brown v. Board of Regents for the Okla. Agricultural and Mechanical Colleges*, 353 Fed. App'x 169, 173 (10th Cir. 2009) (observing that, if the plaintiff fails to provide enough evidence to overcome a motion for summary judgment on a Title VII claim, "such a failure of proof is equally dispositive of both federal and *Burk* discrimination claims"); *Wilbanks v. Nordam Group, Inc*., No. 09-CV-0572-CVE-TLW, 2010 WL 4272581, *17 (N.D. Okla. Oct. 25, 2010).

As discussed above, Plaintiff cannot present evidence sufficient to establish a prima facie case of gender discrimination nor can she establish pretext. For these reasons, Baker Hughes is entitled to summary judgment on Plaintiff's public policy claim.

### G.      Baker Hughes Is Entitled to Summary Judgment on Plaintiff's Claim for Retaliation for Filing a Workers' Compensation Claim

The Oklahoma Workers' Compensation Act prohibited an employer from "discharg[ing]…any employee because the employee has in good faith…[f]iled a claim." Okla. Stat. tit. 85, § 5(A)(1). However, the Act further provided that "[a]fter an employee's period of temporary total disability has ended, no person, firm, partnership, corporation, or other entity shall be required to rehire or retain any employee who is determined to be physically unable to perform assigned duties" and "[t]he failure of an employer to rehire or retain any such employee shall in no manner be deemed a violation of [the Act]." Okla. Stat. tit. 85, § 5(C).

To establish a prima facie for retaliatory discharge under § 5, a discharged employee must show "(1) employment; (2) on-the-job injury; (3) medical treatment putting the employer on notice or the good faith start of workers' compensation proceedings; and (4) consequent termination of employment." *Taylor v. Cache Creek Nursing Centers*, 891 P.2d 607, 610 (Okla. Civ. App. 1994)(citing *Buckner v. Gen'l Motors Corp*., 760 P.2d 803, 806 (Okla. 1988)). A showing of "consequent termination" required production of evidence that gives rise to "a legal

inference [that] the discharge was significantly motivated by retaliation for exercising one's statutory rights." *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1058 (Okla. 1993); *see also Taylor*, 891 P.2d at 610.  A plaintiff need not meet a "but for" standard for a successful § 5 claim; however, she must "present evidence that does more than show the exercise of her statutory rights was only one of many possible factors resulting in her discharge." *Blackwell v. Shelter Mut. Ins. Co.*, 109 F.3d 1550, 1554 (10th Cir. 1997).  Where an employee's allegations are sufficient to bring her within the section's protection, the employer is called upon to present an alternate reason for the employee's termination.  *Buckner*, 760 P.2d at 807.  However, the employee bears the burden of persuasion that any reason given for termination was pretextual. *Id*.

Here, Plaintiff cannot present evidence sufficient to satisfy the fourth element of her prima facie case- consequent termination of employment.  She can present no evidence that would give rise to a legal inference that her discharge was significantly motivated by retaliation because she cannot present evidence that does more than show the exercise of her statutory right was only one of many possible factors resulting from her discharge.  She incurred the workplace injuries no later than October of 2006 (*Ex. 1 (HE-ATCHLEY02307, HE-ATCHLEY02318, Pl's Depo., Att. B)*; her action for workers' compensation benefits was initiated more than a year before she was let go in a reduction in force (*Id.* at *Ex. 1 (HE-ATCHLEY02307), Pl's Depo.; Affidavit of Barbara Stelzer, Att. D; Statement of Undisputed Material Fact 3)*; she received medical attention for the workplace injuries years before she was dismissed *(Ex. 1 HE-ATCHELY02318-02319, Pl's Depo., Att. B);* and, although she was not able to perform all of the essential functions of a cable splicer, she had been allowed to return to work for light duty assignments following the workplace injuries *(Id.* at *Ex. 1 (HE-ATCHLEY02318)).*  These

undisputed material facts simply do not reasonably support a conclusion that Plaintiff was discharged as a consequence of seeking medical attention for workplace injuries or for filing a workers' compensation claim.

Additionally, regardless of the prima facie case, Plaintiff cannot submit evidence of pretext. She was discharged due to a business downturn and employee rankings. *See Undisputed Material Fact 23.* Particularly in light of the undisputed facts referenced in the preceding paragraph, she can present no evidence suggesting that this reason is pretext for retaliation. For these reasons, Baker Hughes is entitled to summary judgment on Plaintiff's workers' compensation retaliatory discharge claim.

## III.   Baker Hughes Is Entitled To Summary Judgment Because Plaintiff Waived Her Claims Against Baker Hughes

On March 3, 2010, in open court, Plaintiff admitted that in exchange for $5,000 she agreed to have a "clean slate" or resolve all disputes and differences between herself and Baker Hughes and that she would not go to any court and ask for any more benefits from Baker Hughes. *See Undisputed Material Facts 25 & 27.* A release is a contract and when its language is clear and without ambiguity, as here, the trial court is to interpret it as a matter of law. *Corbett v. Combined Communications Corp.,* 654 P.2d 616 (Okl. 1982); *Thompson v. Peters, 885 P.2d 686,* 688 (OK CIV APP 1994). Such contracts are valid and enforceable when, (1) an attempt to excuse one party from liability is expressed in clear, definite and unambiguous language, (2) the contract is made at arm's length with no vast disparity of bargaining power between the parties, and (3) when it is not contrary to public policy. *Trumbower v. Sports Car Club of America, Inc*., 428 F.Supp. 1113 (W.D.Okl. 1976). As referenced in Undisputed Material Fact 25, before she filed this lawsuit, Plaintiff had waived all claims that she had against Baker Hughes. Because the

settlement agreement is a valid and enforceable content, Baker Hughes should be granted summary judgment on all claims.

## CONCLUSION

For the reasons set forth above, Baker Hughes respectfully requests this Court enter summary judgment in its favor on all of Plaintiff's claims, and thereafter award all other relief that the Court may deem just and proper.

Respectfully submitted,

s/ Steven A. Broussard
Steven A. Broussard, OBA #12582
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone (918) 594-0400
Facsimile (918) 594-0505
**ATTORNEYS FOR DEFENDANT,
BAKER HUGHES, INCORPORATED**

### CERTIFICATE OF MAILING

I, the undersigned, do hereby certify that on this 14th day of August, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrant:

Brendan M. McHugh
P.O. Box 1392
Claremore, Oklahoma  74018


s/ Steven A. Broussard

1503008.1:220495:00180